*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* E. M. E. WALSH, Minor.

UNPUBLISHED
October 08, 2024
2:51 PM

No. 369455
Wayne Circuit Court
Family Division
LC No. 2023-001754-NA

Before: BOONSTRA, P.J., and JANSEN and N. P. HOOD, JJ.

PER CURIAM.

Respondent appeals by right the family court order terminating her parental rights to her minor child, EW, under MCL 712A.19b(3)(f)(*i*) (child has a guardian, and their parent failed to provide regular and substantial support for two years or more), and MCL 712A.19b(3)(f)(*ii*) (child has a guardian, and their parent regularly and substantially failed to visit, contact, or communicate for two years or more). Because the family court did not clearly err by finding that one or more statutory bases warranted terminating respondent's parental rights, we affirm.

## I. BACKGROUND

Respondent is EW's biological mother.[1] Petitioners are EW's paternal grandparents and coguardians. In September 2023, they petitioned the family court for permanent custody of EW. They sought to terminate respondent's parental rights under MCL 712A.19b(3)(f)(*i*) and (*ii*). They alleged that respondent failed to regularly and substantially support, visit, contact, or communicate with EW for at least the preceding two years. They also alleged that the probate court previously authorized them to adopt EW.

In December 2023, a family court referee conducted a termination hearing. At the time of the hearing EW was eight years old. Petitioner Walsh[2] testified that EW resided in petitioners'

---

[1] EW's biological father is deceased.

[2] Petitioner Walsh is EW's paternal grandmother.

home since June 2018, when he was three years old. She stated that respondent attended roughly half of her scheduled weekly visits with EW between March 2021 and March 2022. Respondent visited EW on one additional occasion in August 2022 but otherwise had not seen him since that date. Petitioner Walsh attempted to schedule additional visits with EW but respondent did not reply to her inquiries regarding availability. Petitioner Walsh stated that she would have welcomed additional visits if respondent attempted to schedule them.

Petitioner Walsh also testified that between March 2021 and March 2023, she denied respondent's requests to speak with EW on the phone on three occasions. Petitioner Walsh otherwise allowed respondent to speak with EW on the phone "a few times." When Petitioner Walsh denied respondent's requests, she did so because she believed that contact with respondent was detrimental to EW's well-being. She explained that EW misbehaved at school after interacting with respondent, and it took time to "get him back on track." She also stated that respondent made only four attempts to speak with EW on the phone in 2023.

Petitioner Walsh further testified that respondent did not provide financial assistance for EW or otherwise help petitioners raise him. Respondent did not send letters or gifts for holidays and birthdays. Nor did she attend EW's medical appointments, school events, or extracurricular activities.

For her part, respondent testified that she attended roughly 40 out of 52 scheduled weekly visits with EW between March 2021 and March 2022. Respondent stated that she visited EW on an additional occasion in July 2022 but otherwise had not seen him since that date. Respondent estimated that petitioners denied her requests to visit EW on five occasions during the two-year period preceding the termination hearing. She also stated that petitioner Walsh never attempted to initiate telephone contact between herself and EW.

Respondent testified that she did not attend any of EW's school events, medical appointments, or extracurricular activities during the two-year period preceding the termination hearing because petitioners never told her when they were scheduled to occur. Respondent stated that she purchased food for EW on three or four occasions during the two-year period preceding the termination hearing.[3] Respondent also offered to pay for a portion of EW's karate classes in early 2021 but petitioners declined. Respondent purchased clothes, a toy truck, and a stuffed animal but EW but acknowledged that she never gave EW the items. Instead, respondent kept them at her home in anticipation of EW returning to her care.

Respondent further testified that three of EW's siblings lived in her home. Respondent received financial assistance from the state of Michigan and used the funds to provide for EW's siblings. Respondent stated that she shared a bond with EW and loved him unconditionally.

After testimony concluded, the family court referee determined that there were statutory bases to terminate respondent's parental rights under MCL 712A.19b(3)(f)(*i*) and (*ii*). She found that respondent attended roughly half of her scheduled visits with EW between March 2021 and

_____

[3] Respondent stated that she purchased EW chicken on one occasion. Otherwise, she did not specify the quantity or nature of the food she provided.

March 2022 and attended only one visit with EW after that period. She also found that respondent failed to financially support EW during the two-year period preceding the termination hearing. She concluded that terminating respondent's parental rights also served EW's best interests. The family court ultimately adopted the referee's recommendation and entered an order terminating respondent's parental rights under MCL 712A.19b(3)(f)(*i*) and (*ii*). This appeal followed.

## II. STANDARD OF REVIEW

We review for clear error the trial court's decision that statutory grounds for termination have been proven by clear and convincing evidence. *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). "A trial court's decision is clearly erroneous if although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *Id*. at 41 (quotation marks, brackets, and citation omitted). We defer to "the special ability of the trial court to judge the credibility of witnesses." *In re Medina*, 317 Mich App 219, 227; 894 NW2d 653 (2016) (quotation marks and citation omitted).

## III. LAW AND ANALYSIS

On appeal, respondent argues that the family court clearly erred by finding that one or more statutory bases warranted terminating her parental rights.[4] We disagree.

To terminate parental rights, the family court must find that at least one basis for termination under MCL 712A.19b(3) has been proven by clear and convincing evidence. *In re Sanborn*, 337 Mich App 252, 272; 976 NW2d 44 (2021). Termination is warranted under MCL 712A.19b(3)(f)(*i*) if "[t]he parent, having the ability to support or assist in supporting the minor, has failed or neglected, without good cause, to provide regular and substantial support for the minor for a period of 2 years or more before the filing of the petition . . . ." MCL 712A.19b(3)(f)(*i*). Additionally, termination is warranted under MCL 712A.19b(3)(f)(*ii*) if "[t]he parent, having the ability to visit, contact, or communicate with the minor, has regularly and substantially failed or neglected, without good cause, to do so for a period of 2 years or more before the filing of the petition." MCL 712A.19b(3)(f)(*ii*).

Initially, respondent argues that termination was not warranted because petitioners thwarted her attempts to regularly contact and support EW. This Court addressed a similar argument in *In re Ernsberger*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 369225); slip op at 2-3. There, the respondent argued that the family court clearly erred by terminating her parental rights under MCL 712A.19b(3)(f)(*i*) and (*ii*) because her children's

---

[4] Respondent arguably waived this issue by failing to include a statement of the question presented in her appellate brief. See *English v Blue Cross Blue Shield of Mich*, 263 Mich App 449, 459; 688 NW2d 523 (2004) ("An issue not contained in the statement of questions presented is waived on appeal."). To the extent that respondent waived this issue, we exercise our discretion to address it. Cf. *Smith v Foerster-Bolser Const, Inc*, 269 Mich App 424, 427; 711 NW2d 421 (stating that this Court may overlook preservation requirements if consideration is necessary for the proper determination of the case).

guardians prevented her from contacting and supporting her children. *Id*. at ___; slip op at 2-3. This Court disagreed. We explained that, although there were instances when the guardians declined to answer her correspondence, the respondent overlooked the guardians' testimony that she neglected to regularly visit her children and only attempted to contact them via phone calls or text messages at inappropriate times. *Id*. at ___; slip op at 2. This Court reasoned that the respondent's sparse correspondence and sporadic visits undermined her argument that the children's guardians prevented her from contacting and supporting her children. *Id*. at ___; slip op at 2. We concluded that the family court correctly terminated the respondent's parental rights under MCL 712A.19b(3)(f)(*i*) and (*ii*). *Id*. at ___; slip op at 3-4.

Here, the family court did not clearly err by concluding that termination was warranted under MCL 712A.19b(3)(f)(*i*). The record reflects that respondent did not provide regular or substantial financial support for EW. Petitioner Walsh testified that respondent did not provide financial support for EW or otherwise help petitioners raise him. Respondent testified that she cared for three other children with financial assistance she received from the state of Michigan. Yet, respondent only purchased food for EW on three or four occasions, and petitioners declined her sole offer to pay for a portion of EW's karate classes. Additionally, respondent testified that she purchased clothes and toys for EW but acknowledged that she never gave him those items. Because the record reflects that respondent failed to provide regular and substantial support for EW despite having the ability to do so, the family court did not clearly err by concluding that termination was warranted under MCL 712A.19b(3)(f)(*i*).

Nor did the family court clearly err by concluding that termination was warranted under MCL 712A.19b(3)(f)(*ii*). The record reflects that respondent attended roughly half of her scheduled weekly visits with EW between March 2021 and March 2022. Respondent visited EW on one additional occasion in 2022 but otherwise has not seen him and has made only four attempts to contact him by phone. Respondent did not send EW letters, birthday cards, or holiday cards. And throughout the duration of the guardianship, respondent neglected to attend any of EW's medical appointments, school events, or extracurricular activities. Respondent testified that on five occasions petitioners denied her requests to visit EW. And petitioner Walsh acknowledged that on three occasions she denied respondent's requests to speak with EW on the phone because doing so adversely impacted his behavior. Yet, petitioner Walsh also testified that she welcomed additional visits and attempted to schedule them but received no response to her inquiries. Like *In re Ernsberger*, ___ Mich App at ___; slip op at 2, respondent's inaction undermines her argument that petitioners thwarted her attempts to regularly visit, contact, or communicate with EW. Because the record reflects that respondent failed to regularly visit, contact, or communicate with EW despite having the ability to do so, the family court did not clearly err by concluding that termination was warranted under MCL 712A.19b(3)(f)(*ii*).

We affirm.

/s/ Mark T. Boonstra
/s/ Kathleen Jansen
/s/ Noah P. Hood

-4-